UNITED STATES, Appellee,

v.

William D. GIBSON, Airman Recruit,
U.S. Navy, Appellant.

No. 39,474.
NCM 78 1534.

U. S. Court of Military Appeals.

Aug. 24, 1981.

Appellant: *Lieutenant Earl B. Taylor*, JAGC, USNR (argued); *Commander Walter J. Landen*, JAGC, USN (on brief).

Appellee: *Commander T.C. Watson, Jr.*, JAGC, USN (argued); *Lieutenant William C. Martucci*, JAGC, USN (on brief).

Opinion of the Court

EVERETT, Chief Judge:

The appellant was tried by special court-martial with military judge alone on charges of attempted rape under Article 80, and assault with intent to rape, under Article 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 934, respectively. Upon conviction of both offenses, the military judge sentenced appellant to a bad-conduct discharge, 6 months' confinement, and partial forfeitures; but he recommended that the discharge be suspended. This recommendation was not accepted by

the convening authority, who approved both the findings and the sentence as adjudged. In turn, the supervisory authority approved, and the United States Navy Court of Military Review affirmed these results.

■ We granted review to consider this issue:

IN VIEW OF THE SIMILARITY OF ALLEGATION IN THE TWO CHARGES, SHOULD THE MILITARY JUDGE OR APPELLATE AUTHORITIES HAVE DISMISSED ONE OF THE CHARGES?

Upon consideration of the pleadings and the proof in light of the rationale expressed in *United States v. Hobbs*, 7 U.S.C.M.A. 693, 23 C.M.R. 157 (1957), we conclude that the two specifications allege essentially the same offense and that one of the findings of guilt must be set aside and the related charge dismissed.

I

On February 3, 1978, the appellant—a seventeen-year-old sailor who had enlisted in the Navy a few months before—and another sailor were assigned to a room then occupied by YNSN Richard Walters. Walters had a girl friend, also a member of the Naval service, who, after attending a farewell party at a bar on the evening of February 3rd, repaired to Walters' room in violation of regulations. Subsequently she undressed and joined him in bed, where, unclothed and asleep, she was lying under a blanket around 2:30 a.m. when Gibson—who then seemed "drunk" or "sedated"—returned to the room and prepared for bed.

Aside from a casual encounter at the bar earlier in the evening, when he had audibly admired her physical attributes, appellant previously had enjoyed no acquaintance with Walters' girl friend. Nonetheless—perhaps impelled by heavy ingestion of alcohol earlier in the evening and by viewing an X-rated film—appellant crawled into the bunk with her when Walters left the room a few minutes after Gibson's arrival. Appellant's ensuing efforts to induce her participation in sexual intercourse proved unavailing; and his persistence in this enter-

prise, despite her refusal, gave rise to the charges preferred against him. Ironically, appellant was the only person who suffered physical harm that evening, his injuries being inflicted by Walters, who had returned to the room and been apprised of appellant's amorous endeavors.

The identical overt acts were alleged for both the attempt and the assault. Thus, the specification of the first charge alleged that the appellant

did [at a specified time and place] attempt to rape [his named victim] by climbing into bed with [the victim], by turning her from her stomach to her back, climbing on top of her, caressing her sides with his hands, placing his hand over her mouth and attempting to insert his penis into her vagina.

Similarly, the specification laid under the second charge alleged that the appellant

did [at the same time and place] with intent to commit rape, commit an assault upon [the same named victim] by climbing into bed with [the victim], by turning her from her stomach to her back, climbing on top of her, caressing her sides with his hands, placing his hand over her mouth and attempting to insert his penis into her vagina.

At trial, the defense counsel contested on grounds of intoxication the specific intent required by each charge and argued that appellant had desisted from his efforts at intercourse as soon as, in his then befuddled condition, he had realized that his roommate's girl friend was not inclined to have intercourse with him. The military judge nonetheless found appellant guilty on each charge. Thereupon, on his own motion, he found the charges multiplicious for sentencing purposes. However, the judge did not dismiss either charge, nor was he requested to do do by defense counsel.

II

The language of Article 128 of the Uniform Code, 10 U.S.C. § 928, which defines assault in terms of an attempt or offer with unlawful force to do bodily harm to another person makes clear the intimate relation-

ship between attempts and assaults.[1] Thus, although in *United States v. Hobbs, supra,* there were three separate opinions, all the Judges apparently were of the same mind that, where the specification alleges and the proof reflects that an assault on the intended rape victim was the overt act required for an attempt to rape, then the two offenses are the same. As stated in the principal opinion in *Hobbs*:

> Assault with intent to commit rape consists of an attempt or offer with unlawful force and violence to do bodily harm to another, accompanied by a specific intent to commit rape. Manual for Courts-Martial ... [United States, 1951], paragraph 213*d*(1)(c), page 385. When that crime is compared with the offense of attempted rape, it is at once apparent that the sexual intent is the same in both instances, and that the overt act required for the latter may well consist of an assault. Many courts have had difficulty distinguishing the two offenses, and "there is authority that every assault with intent to rape is an attempt, but that the converse does not follow." 75 CJS, Rape, § 21, page 488. Paragraph 213*d*(1), page 384, of the Manual clearly suggests that, in general, "An assault with intent to commit an offense is not necessarily the equivalent of an attempt to commit the intended offense." However sound this may be in the case of other intended offenses (See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 296, for illustration), it is difficult indeed to conjure up a hypothetical situation to support this where the intended offense is rape.

*Id.* at 698, 23 C.M.R. at 162. The validity of this view expressed in *Hobbs* remains unimpaired.

■ Moreover, under principles enunciated by the Supreme Court, offenses should be treated as the same when, in light of the allegations, the proof of one necessarily requires proof of the other. *Cf. Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In any event, no increase in punishment should be allowed under such circumstances. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

■ The Government now contends that, by treating the two charges as multiplicious for sentencing purposes, the military judge protected the appellant from any prejudice resulting from the repetitious charging of what constituted a single offense. Juxtaposition of the jurisdictional limitations applicable to the special court-martial which tried appellant against the maximum punishments imposable for either of these offenses tends to support the government's position. However, to accept this argument would ignore the unusual circumstances which, along with the appellant's youth, undoubtedly induced the military judge to recommend in the case at bar that suspension of the punitive discharge be considered. Typically a sentencing authority, among other things, is concerned with general deterrence. *Cf. United States v. Lania,* 9 M.J. 100 (1980). In this regard he will take into account the impact of a proposed sentence on those persons whom he wishes to deter from committing similar offenses. Accordingly, when a sentence is imposed for what purports to be two separate and serious crimes—even though the trained legal mind may recognize that they are one and the same—there will be some tendency to be more severe than if clearly there is to be only a single offense to be punished. With such factors in mind, we are not convinced by our review of the record that the military judge would have adjudged the same sentence even if one of the two charges had been dismissed.

---

1. The Manual for Courts-Martial, United States, 1969 (Revised edition), states in paragraph 159: "An attempt to commit an offense should be charged under this article *unless the attempt is specifically denounced by some oth-* *er article, in which event it should be charged under that article.* See Articles 85, 94, 100, 104, 128." *See* para. 159, Manual for Courts-Martial, United States, 1951, for a similar version.

### III

The confinement has been served long ago, so we shall focus on the bad-conduct discharge, as to which remedial action remains available. Accordingly, the decision of the United States Navy Court of Military Review is reversed. The record is returned to the Judge Advocate General of the Navy for remand to the Court of Military Review, which shall set aside the findings as to one of the two charges of which the appellant was convicted and dismiss that charge. In addition, that court shall either set aside the bad-conduct discharge or order a rehearing on the sentence.

Judge FLETCHER concurs.

COOK, Judge (concurring in part and dissenting in part):

I agree with the majority opinion that because one of the offenses is included within the other it can be dismissed at the appellate level. However, some offenses are multiplicious for sentencing purposes, but are not lesser included offenses of a major offense. *Compare United States v. Mosely*, 1 M.J. 350 (C.M.A. 1976); *United States v. Axley*, 1 M.J. 265 (C.M.A. 1976); and *United States v. Smith*, 1 M.J. 260 (C.M.A. 1976), *with United States v. Maginley*, 13 U.S.C.M.A. 445, 32 C.M.R. 445 (1963). If various offenses are multiplicious for sentencing but do not stand in the relationship of lesser included within a major offense, a military judge would be illadvised to dismiss one or more of the offenses at the trial level; if the offense is successfully challenged on appeal on a basis which affects only that offense, there is no remaining offense which may be affirmed by the appellate authorities.[*] Indeed, in *United Stated v. Stegall*, 6 M.J. 176, 177 (C.M.A. 1979), the Court observed that it was appropriate to dismiss a lesser included offense with the following comments:

We held that "procedurally, a multiplicious offense is allowed to be separately charged only to enable the Government to meet the exigencies of proof." ... [*United States v. Williams*, 18 U.S.C.M.A. 78, 81, 39 C.M.R. 78, 81 (1968)]. *See* paragraphs 26*b*, 74*b*(4), and 76*a*(5), Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Middleton*, 12 U.S.C.M.A. 54, 30 C.M.R. 54 (1960). We further held that when the necessity is not present, a multiplicious offense may be dismissed on motion before plea, or the findings of guilty may be disapproved before sentence so as to guarantee that the offense is not reflected in the final punishment imposed upon the accused.

As the present case involves an included offense, as well as a multiplicious offense, I agree that under these circumstances one of them can be dismissed, because the dismissed offense may still be affirmed by appellate authorities even if the findings of guilty as to the major offense are disapproved.

I disagree with the disposition ordered by the majority as to the sentence. The military judge declared that he considered the offenses as multiplicious for sentencing. As recently as *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981), the Court dismissed a multiplicious offense with the following observation:

As no reasonable likelihood exists of a subsequent challenge to the validity of the findings of guilty of one or the other of the specifications, dismissal of one of them at this time would not disadvantage the Government. Accordingly, we reverse the decision of the Court of Military Review as to specification 1, Charge III, set aside the findings of guilty of that offense, and dismiss the specification. *United States v. Stegall, supra* at 178. Considering the number and nature of the remaining findings of guilty and the

---

[*] For example, if the defendant obtains a reversal on appeal of his conviction for the sale of drugs because he was an agent of the purchaser, his conviction for the possession and transfer of the same drugs would be unaffected although the three offenses may be multiplicious for sentencing. The evidence may be insufficient as to a sale, but sufficient as to either transfer or possession.

sentence adjudged at trial, we perceive no reasonable possibility of benefit to the accused by remand of the record to the Court of Military Review for reassessment of the sentence. *United States v. Holsworth*, 7 M.J. 184 (C.M.A. 1979). Accordingly, we otherwise affirm the decision of the United States Navy Court of Military Review.

Thus, the Court recognized that where the adjudged maximum sentence is unaffected by failure to treat offenses as multiplicious, sentencing relief is not required. Here, the offenses were in fact treated as multiplicious and the maximum imposable sentence was unaffected. Thus, I perceive no possibility of prejudice as to the sentence in this case. In *United States v. Stegall, supra* at 178, the Court also affirmed the sentence, although it dismissed a lesser included offense. The Court specifically observed:

As the military judge indicated that he would treat the two offenses as multiplicious for sentencing, the sentence is unaffected by the error discussed and may, therefore, be affirmed.

*Id.*, n. 1.

Accordingly, I would affirm the sentence in the present case.